KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
WARREN A. BRAUNIG - # 243884
wbraunig@keker.com
JO W. GOLUB - # 246224
jgolub@keker.com
SARAH SALOMON - # 308770
ssalomon@keker.com
DEEVA SHAH - # 319937
dshah@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant FRESHWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ZOHO CORPORATION PVT. LTD,<br><br>    Plaintiff,<br><br>    v.<br><br>FRESHWORKS INC.,<br><br>    Defendant. | Case No. 3:20-cv-01869-VC<br><br>**DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      August 20, 2020<br>Time:      10:00 A.M.<br>Judge:     Hon. Vince Chhabria<br><br>Date Filed: March 17, 2020<br><br>Trial Date:  TBD |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................1

I.      INTRODUCTION ...........................................................................................................1

II.     RELEVANT FACTUAL ALLEGATIONS ....................................................................2

III.    ARGUMENT ...................................................................................................................4

        A.      Zoho fails to allege facts sufficient to establish its trade-secret claims. .................5

                1.      Zoho fails to state a claim for misappropriation of its Partner
                        commission structure. ....................................................................................7

                2.      Zoho fails to state a claim for misappropriation of its client data
                        compilations. ..................................................................................................8

                3.      Zoho fails to state a claim for misappropriation of its revenue
                        figures. ..........................................................................................................10

                4.      Zoho cannot cobble together trade-secret misappropriation claims
                        with references to general business know-how. ...........................................12

        B.      Zoho's trade-secret allegations concerning revenue information, and
                concerning unspecified product information and know-how, are time-
                barred. .........................................................................................................................13

IV.     CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alta Devices, Inc v. LG Electronics, Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) ...............................................................6, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................4, 5

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
  No. 15-cv-02177-SI,2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ......................14

*CleanFish, LLC v. Sims*,
  No. 19-CV-03663-HSG, 2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ...................6, 8, 9, 10

*Cotter v. Lyft, Inc.*,
  No. 13-CV-04065-VC, 2016 WL 3654454 (N.D. Cal. June 23, 2016) ..................11

*Excelligence Learning Corp. v. Oriental Trading Co.*,
  No. C 03-4947 JF, 2004 WL 2944048 (N.D. Cal. Dec. 20, 2004) ........................13

*Finkelstein v. AXA Equitable Life Ins. Co.*,
  325 F. Supp. 3d 1061 (N.D. Cal. 2018) ................................................................13

*Gatan, Inc. v. Nion Co.*,
  No. 15-CV-01862-PJH, 2018 WL 2117379 (N.D. Cal. May 8, 2018) .....................5

*Heliotrope Gen. Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ................................................................................11

*Hendrickson v. Octagon Inc.*,
  225 F. Supp. 3d 1013 (N.D. Cal. 2016) ................................................................12

*Intermedics, Inc. v. Vetritex, Inc.*,
  822 F. Supp. 634 (N.D. Cal. 1993) ..................................................................14, 15

*MAI Sys. Corp. v. Peak Comput., Inc.*,
  991 F.2d 511 (9th Cir. 1993) .............................................................................9, 10

*Navigation Holdings, LLC v. Molavi*,
  No. 19-CV-02644-LHK, 2020 WL 1492693 (N.D. Cal. Mar. 27, 2020) ................5

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT
Case No. 3:20-cv-01869-VC

1386203

*Space Data Corp. v. X*,
 No. 16-CV-03260-BLF, 2017 WL 3007078 (N.D. Cal. July 14, 2017) ...................................5

*Vendavo, Inc. v. Price f(x) AG*,
 No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......................6, 8, 9, 14

*Veronica Foods Co. v. Ecklin*,
 No. 16-cv-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ..................................13

*Wang v. Palo Alto Networks, Inc.*,
 No. C 121-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) .........................14, 15

**State Cases**

*Citcon USA, LLC v. RiverPay Inc.*,
 No. 18-CV-02585-NC, 2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ..................................5

*Czajkowski v. Haskell & White, LLP*,
 208 Cal. App. 4th 166 (2012) ..................................................................................................15

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*,
 83 Cal. App. 4th 409 (2000) ..............................................................................................7, 11

*Gemini Aluminum Corp. v. California Custom Shapes, Inc.*,
 95 Cal. App. 4th 1249 (2002) ...................................................................................................7

**Federal Statutes**

18 U.S.C. § 1836....................................................................................................................6, 13

18 U.S.C. § 1839(3) ...............................................................................................................6, 11

18 U.S.C. § 1839(5) ......................................................................................................................6

Defend Trade Secrets Act of 2016, Pub. L. 114-153, 130 Stat. 376 (May 11, 2016)...................14

**State Statutes**

Cal. Bus. & Prof. Code § 16600 ................................................................................................12

Cal. Civ. Code § 3426.1(a-d) ................................................................................................6, 11

Cal. Civ. Code. § 3426.6...........................................................................................................13

California Code of Civil Procedure § 2019.210 ...........................................................................5

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................................ *passim*

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT
Case No. 3:20-cv-01869-VC

1386203

1   **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2           PLEASE TAKE NOTICE that on August 20, 2020 at 10:00 a.m., or as soon thereafter as

3   counsel may be heard, defendant Freshworks, Inc. ("Freshworks") moves the Court, located at

4   450 Golden Gate Avenue, 17th Floor, Courtroom No. 4, San Francisco, California, for an order

5   dismissing all claims in the First Amended Complaint ("FAC") filed by plaintiff Zoho

6   Corporation Pvt. Ltd. ("Zoho").[1]

7           Freshworks brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

8   Procedure on the grounds that (1) Zoho has not sufficiently pleaded violations of DTSA and

9   CUTSA and (2) many of Zoho's claims are time-barred. This motion is based on the following

10  Memorandum of Points and Authorities, the current record, arguments of counsel, and all matters

11  of which the Court may take judicial notice.

12
    Dated: June 25, 2020                                    KEKER, VAN NEST & PETERS LLP
13

14
                                                 By:    /s/ Eric MacMichael
15                                                      ROBERT A. VAN NEST
                                                        ERIC H. MACMICHAEL
16                                                      WARREN A. BRAUNIG
                                                        JO W. GOLUB
17                                                      SARAH SALOMON
                                                        DEEVA SHAH
18
                                                        Attorneys for Defendant FRESHWORKS,
19                                                      INC.

20

21

22

23

24

25

26

27

28  [1] The parties have met and conferred regarding this motion and the hearing date.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In 2010, Girish Mathrubootham and Shan Krishnasamy left Zoho, a legacy provider of online business tools, and founded their own company, Freshworks. Over the past decade, Freshworks, which is headquartered in San Mateo, has invested thousands of hours and millions of dollars into research-and-development to build a suite of cloud-based employee productivity products, including tools for customer relationship management (Freshsales), customer support (Freshdesk), IT service management (Freshservice), and collaboration (Freshconnect). Despite operating in a crowded industry that includes numerous vendors with similarly targeted products and features, including Salesforce, Zendesk and ServiceNow, Freshworks has gained a foothold and achieved success. Earlier this year, Freshworks announced that its annual recurring revenue had doubled in the past eighteen months to over $200 million.

In March 2020, a ***decade*** after Mathrubootham and Krishnasamy left their former company, Zoho brought the instant litigation, leveling a scattershot series of (mostly) baseless allegations against Freshworks and its executives to undermine Freshworks' position in the marketplace. Many of the claims pertain to conduct that supposedly occurred at the time of Mathrubootham and Krishnasamy's departure, and are long time-barred; other allegations are premised on mere speculation and conjecture. For example, Zoho speculates that, because Freshworks and Zoho sell similar products, Freshworks' products must be derived from Zoho's (they are not). Likewise, Zoho pleads the misappropriation of "revenue information" and "Partner commission rates," but does not allege what information was supposedly misappropriated, how, or by whom. Even the most concrete allegations in the First Amended Complaint—that a single Freshworks employee sent emails to contacts obtained from Zoho's CRM database—fails to identify with requisite specificity the "trade secret" compilations including those contacts.

The result is a trade secrets complaint with no trade secrets and minimal evidence of conduct that even approximates misappropriation. Zoho's threadbare allegations fail to meet federal pleading requirements. The First Amended Complaint ("FAC") should be dismissed.

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-cv-01869-VC

1386203

## II.    RELEVANT FACTUAL ALLEGATIONS

This case concerns two providers of web-based business software and information technology tools—Plaintiff Zoho, which has been operating since 1996, and Defendant Freshworks, which was founded in 2010 by Girish Mathrubootham and Shan Krishnasamy. FAC ¶¶ 21, 30. Prior to founding Freshworks in 2010, Mathrubootham was a Vice President of Product Management at Zoho, and Krishnasamy was a Technical Architect. *Id*. ¶ 28.

In the ten years since, Freshworks has grown quickly and has launched numerous software-as-a-service (SaaS) products—including Freshdesk, a customer service solution; Freshservice, an IT service management tool; Freshsales, a customer relationship management ("CRM") system; and Freshteam, a human resources solution. *Id.* ¶ 35. Despite the public launch of these products over the years, it was not until March 17, 2020—almost ten years after Mathrubootham and Krishnasamy left Zoho—that Zoho filed a complaint alleging trade secret misappropriation. ECF. 1. Zoho also pleaded intentional interference with prospective economic relations, conversion, and unjust enrichment claims in its initial complaint, but has removed those claims from the FAC, which was filed on June 5, 2020. *Id.* As with its initial complaint, however, Zoho alleges that Freshworks' purported misappropriation of its trade secrets began all the way back in June 2011, when Mathrubootham "disclosed Zoho's confidential revenue figures to investors in pitch materials and in published interviews." FAC ¶ 31.

Zoho bases its claims against Freshworks on five categories of alleged misconduct. ***First***, Zoho alleges that "Mathrubootham started using . . . non-public Zoho revenue numbers" in June 2011 to explain to investors why Freshworks would be successful. *Id.* ¶ 31. However, the FAC fails to allege how those revenue numbers are confidential or constitute protectable trade secrets with independent economic value. Instead, Zoho vaguely alleges that Mathrubootham and Krishnasamy (*a decade ago*) had "access to and retain[ed] valuable information regarding Zoho customers and leads including . . . revenue numbers." *Id.* ¶ 33.

***Second***, Zoho alleges that Freshworks has improperly accessed compilations of customer data housed in its CRM system. *Id.* ¶ 37. The FAC alleges that a single Freshworks employee accessed "confidential customer, sales, and product requirements information housed in Zoho's

CRM database," and used email addresses to send solicitation emails over the span of a few weeks. *Id.* ¶¶ 38, 46. But Zoho does not allege how these lists were compiled or what customer specifications and pricing information is included in them, beyond broad and conclusory categories of data. *Id.* ¶¶ 53, 64. Moreover, Zoho does not explain what portions of this information Freshworks misappropriated, aside from a few email addresses. *Id.* ¶ 11. Elsewhere, Zoho relies on happenstance, suggesting that its client lists have been misappropriated simply because "[s]hortly after" two companies requested quotes for Zoho's ManageEngine product, "Freshworks contacted the customer[s] offering a competing solution." *Id.* ¶ 47.

*Third*, Zoho claims that "Freshworks has recruited over a hundred employees from Zoho" over a ten-year time frame, allegedly in order "to gain access to . . . Zoho's confidential customer, marketing, sales, and product development information." *Id.* ¶ 34. According to Zoho, Freshworks has used "confidential information" gleaned from these employees "to undercut pricing and target sales strategies to Zoho's customers and sales leads" and "to craft Freshworks' marketing and press strategy" such that Freshworks can "tim[e] its press releases to coincide with Zoho's major product announcements." *Id.* ¶ 35, 36. However, the FAC is devoid of *any* specifics regarding when Freshworks recruited these employees, what improper means it used in recruitment, and what confidential information the employees purportedly took.

Instead, Zoho presents a cherry-picked chart of Zoho and Freshworks press releases from three dates (one in 2016, one in 2017, and another in 2018), which it claims reflect that Freshworks has used Zoho's confidential information received from recruited employees to track Zoho's product releases. *Id.* ¶ 36. However, Zoho does not explain how the timing of these *entirely unrelated* press releases reveals that confidential information was used, that any such information came from former employees, or how the press releases allegedly "dull[ed] the market impact of the launch of new Zoho products." *Id*. For example, Zoho does not explain how Freshworks' November 15, 2018, "press release regarding executive hires" has anything to do with Zoho's similarly-timed announcement of "Zoho Analytics—business intelligence and analytics platform" and its "major updates to Zoho Social," nor what market impact Zoho suffered from Freshworks' unrelated press release on the same day. *Id*.

*Fourth*, Zoho alleges, "on information and belief" that Freshworks "is pressuring Zoho's Partners to switch their Zoho-based sales contracts, clients, and projects to Freshworks and disclose to Freshworks Zoho confidential information." *Id.* ¶ 13. To convert these Partners, Freshworks has allegedly disclosed Zoho's "confidential Partner commission structure." *Id.* ¶ 48. But Zoho fails to identify what this Partner commission structure is, why it has independent economic value, how Freshworks improperly obtained it or who supposedly disclosed it, other than that someone "somehow gained access" to it. *Id.* Zoho's claim regarding misappropriation of this "trade secret" is based on a single vague and conclusory allegation: "[I]n 2019 Freshworks met with Zoho Partner EasyToCheck . . . [and] disclosed knowledge of the Zoho Partner commission rate structure." *Id.* Zoho does not even allege that EasyToCheck became a Freshworks partner, or that Zoho was harmed by this supposed misappropriation.

*Fifth*, and finally, Zoho pleads, as a broad catch-all, that Mathrubootham and Krishnasamy, who had worked at Zoho for nine years, "used Zoho know-how, product development, and market data" acquired during their employment "to start Freshworks." *Id.* ¶¶ 7, 8. Zoho does not specify which confidential plans Mathrubootham and Krishnasamy allegedly accessed before their departure in 2010. Indeed, Zoho concedes that such knowledge is widespread within the company: "[E]mployees throughout the entire organization . . . have knowledge of Zoho's plans for future product development and offerings." *Id.* ¶ 3. Nor does Zoho specify when those allegedly confidential materials were taken. Instead, Zoho cites as evidence of misappropriation the fact that Freshworks has developed CRM, IT, HR, and other product lines that Zoho also happens to carry. *Id.* ¶ 9 (listing purportedly similar Zoho and Freshworks products). But Zoho neglects to discuss the other competitors offering similar products in the market, as well as the product lines Freshworks offers that Zoho does not. Based on these allegations, Zoho asserts DTSA and CUTSA claims. *See* ¶¶ 52-71.

## III.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), Zoho's FAC must plead sufficient facts that, when taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more than a sheer

1   possibility that a defendant acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "a

2   formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 &

3   n.3. Furthermore, although the Court accepts non-speculative factual allegations as true, it is not

4   required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678;

5   *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they

6   must be supported by factual allegations."). Thus, the Court may begin "by identifying pleadings

7   that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at

8   679. The Court must then determine whether the remaining factual allegations in the FAC

9   "plausibly give rise to an entitlement of relief." *Id.*

10          In a trade-secrets case, it is appropriate for the Court reviewing a motion to dismiss to

11   ***consider the sufficiency of the allegations regarding each purported trade secret separately***.

12   *See, e.g.*, *Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2018 WL 6813211, at *5

13   (N.D. Cal. Dec. 27, 2018) (holding some trade secret claims sufficiently pleaded but dismissing

14   others for lack of particularity); *see also Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644-

15   LHK, 2020 WL 1492693, at *6 (N.D. Cal. Mar. 27, 2020) (holding some allegations of

16   misappropriation were sufficiently pleaded but dismissing others).

17          Zoho's FAC fails to satisfy Rule 12(b)(6) for two reasons: (1) each of its trade secret

18   claims lack sufficient facts to state a claim and (2) many of its claims are time-barred. For these

19   reasons, the FAC should be dismissed.[2]

20          **A.      Zoho fails to allege facts sufficient to establish its trade-secret claims.**

21          Zoho's trade-secret claims should be dismissed because they are insufficiently pleaded. A

---

[2] To the extent Zoho intends to serve a trade secret disclosure pursuant to Section 2019.210 of the California Code of Civil Procedure (which, despite filing this suit over three months ago, it has not yet done), that disclosure does not factor into the Rule 12(b)(6) analysis. Said differently, the ***pleading*** requirement that Zoho's FAC sufficiently state claims upon which relief can be granted is separate and distinct from the requirement that Zoho "identify [its] trade secret[s] with reasonable particularity" prior to "commencing discovery." Cal. Civ. Proc. Code § 2019.210; *see also Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017) (noting that the "2019.210 statement is an issue separate from [the] motion to dismiss.*"); Gatan, Inc. v. Nion Co.*, No. 15-CV-01862-PJH, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (same). Zoho cannot evade the dismissal of its factually deficient FAC by offering to serve a trade secret disclosure at some later date.

trade secret is defined as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3) (similar definition under the DTSA). Under both the CUTSA and the DTSA, a plaintiff must plausibly allege: (1) the existence of a trade secret; and (2) demonstrate that a specific trade secret was misappropriated. *See* Cal. Civ. Code § 3426.1(b); 18 U.S.C. §§ 1836, 1839.

Courts have held that the DTSA and CUTSA share the same pleading requirements to identify the existence of a protectable trade secret. *Alta Devices, Inc v. LG Electronics, Inc.*, 343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018). Under both, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

Once a plaintiff sufficiently identifies a protectable trade secret, CUTSA and DTSA require the plaintiff to adequately allege misappropriation of that specific trade secret—either through acquisition, disclosure, or use through "improper means." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(a-d). A plaintiff cannot satisfy this burden by alleging facts that are "merely consistent with both a theory of [misappropriation] and the theory that Defendants used [Plaintiff's] confidential [information]," but rather must plead facts that "tend to exclude an innocent explanation." *CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) (citation omitted).

Zoho asserts Freshworks misappropriated three specific categories of trade secrets: (1) "its confidential Partner commission rate structure"; (2) "compliations [sic] of customer and lead names, private email addresses, phone numers [sic], key contacts, engagement history, feature and product preferences, pricing terms, prior offers, feature requests and sale strategy information" and; (3) "confidential revenue figures for Zoho products." FAC ¶¶ 53, 64. Zoho also

1386203

makes allegations regarding Freshworks' misappropriation of Zoho's general business know-how, but has failed to include that category in its trade secret causes of action. FAC ¶¶ 53, 64.

For each category, Zoho does not adequately plead the existence of a trade secret or allege facts showing how Freshworks misappropriated the trade secrets. Instead, Zoho relies on vague, unsubstantiated allegations: an amalgamation of unrelated press releases highlighting Freshworks' success in the software management industry; ambiguous allegations of conduct from over a decade ago; Zoho's unsupported beliefs regarding employee recruitment over that decade; and uncorroborated non-specific allegations concerning a single Partner.

### 1. Zoho fails to state a claim for misappropriation of its Partner commission structure.

Zoho claims Freshworks "disclosed knowledge of Zoho's confidential Partner commission structure." *Id.* ¶ 48. But Zoho does not allege how its supposedly confidential commission structure has independent economic value. *See Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1263 (2002) ("When information has no independent economic value, a claim for misappropriation lacks merit."). Virtually every company that sells a product has a commission structure for salespeople and outside vendors. Zoho does not allege how its commission structure is different from what is generally known in the SaaS industry, or would be valuable to anyone else. Even if Zoho did keep its commission structure confidential, that alone does not make it a trade secret. *See GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 428-29 (2000), *as modified* (Sept. 14, 2000), *as modified on denial of reh'g* (Sept. 26, 2000) (even though "[e]vidence of the *secrecy* of [Plaintiff's] salary information was indeed undisputed," Plaintiff "failed to prove the other prong of the definition of a trade secret: that the information had 'independent economic value.'"). This trade secret fails, then, at the first step.

Even if a commission structure could be a trade secret, Zoho has not alleged it with sufficient particularity. The FAC lacks any description of how the commission structure was developed; its various tiers; or whether Freshworks has misappropriated a particular version. Given this lack of specifics, Freshworks—and the Court—cannot separate this purported trade

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-cv-01869-VC

secret from "matters of general knowledge in the trade" or "ascertain . . . the boundaries within which the secret lies." *Vendavo,* 2018 WL 1456697 at *4 (citation omitted).

Zoho also fails to allege *how* Freshworks misappropriated Zoho's commission structure, other than to allege generally that Freshworks "made use of it in an effort to convert Zoho partners." *Id.* The FAC does not explain how Freshworks supposedly obtained Zoho's commission structure; who obtained the structure; who then shared the rates with Partners; or how the structure was shared. Instead, Zoho broadly states that Freshworks "attempted to undercut" Zoho's commission rate in order to convert one specific Partner. But, on its own, offering a better commission rate than Zoho offers does not prove misappropriation. Again, Plaintiff cannot allege facts "merely consistent" with misappropriation; it must plead facts that tend to "exclude an innocent explanation." *CleanFish*, 2020 WL 1274991 at *10 (citation omitted). For all of these reasons, Zoho's DTSA and CUTSA claims related to its Partner commission structure fail.

### 2. Zoho fails to state a claim for misappropriation of its client data compilations.

Freshworks also alleges that "compliations [sic] of customer and lead names, private email addresses, phone numers [sic], key contacts, engagement history, feature and product preferences, pricing terms, prior offers, feature requests and sale strategy information" are Zoho trade secrets. FAC ¶¶ 53, 64. But Zoho fails to sufficiently allege even the basic structure of its "compilation" trade secrets: Do these compilations include each of the alleged subsets of information (name, email address, phone number, etc.) for each user on a single list? Or are the purported trade secrets separate compilations, each of a distinct subset of information (one for lead names, one for email addresses, and so forth)? How many of these compilations does Zoho allege are trade secrets that Freshworks has misappropriated? This ambiguity is fatal to Zoho's trade secret claim.

Zoho's claim based on client "compilations" fails to allege a protectable trade secret. Client lists can constitute a trade secret when that information is "assembled over many years and allows a company to tailor its service contracts and pricing to the unique needs of its customers."

8

*MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993). But, Zoho cannot clear that bar by "set[ting] out [these] purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally ***may*** qualify as . . . trade secrets than as any kind of listing of ***particular*** trade secrets." *Vendavo*, 2018 WL 1456697, at *4 (emphases added).

Here, Zoho has simply described what ***could*** be a trade secret, but not a specific trade secret. Zoho presents its compilations as a laundry list of specifications including

> confidential information about customers, presale engagements and potential leads including private individual contact information, private phone numbers, private email addresses, individual customer product needs, individual customers, product preferences, individual customer product and feature suggestions, historical purchasing information, engagement history and Zoho revenue information

FAC ¶ 11. Zoho also nebulously describes "its deep understanding of and long-term commitment to the needs of its customers." FAC ¶ 22. But, Zoho does not explain the process of creating and maintaining these compilations; over what time period the customer information included in these compilations was collected; how it culled the specifications included in the database to allow Zoho to tailor its services and pricing to customers; or how any of that information is distinct from generally-available information about possible customers for SaaS software.

Zoho's allegations are even more vague than those deemed insufficient in *CleanFish*. There, plaintiff alleged its customer lists were compiled using "efforts to identify and service a specific client base that was environmentally conscious and sought products from sustainable methods and sources," and that "it took many years to assemble [its] customer lists." 2020 WL 1274991 at *10 (internal quotation marks omitted). Unlike Zoho, the plaintiff in *CleanFish* identified the timeframe for building its CRM and the types of customers it was targeting. Even so, the court found "these broad allegations are . . . too high-level to give the Court or Defendants notice of the boundaries of any alleged trade secret, and do not separate the allegations from general knowledge within the industry." *Id.*; *see also MAI Systems*, 991 F.2d at 521 (noting compilation "assembled over many years" which allowed plaintiff "to tailor its service contracts and pricing to the unique needs of its customers" was protectable). Zoho's allegations fall short of alleging a trade secret.

With regard to misappropriation of these wide-ranging compilations, Zoho vaguely pleads

9

1   that Freshworks has been "systematically contacting Zoho's customers using Zoho confidential

2   information." FAC ¶ 11. But in terms of specific claims of misappropriation, Zoho primarily

3   alleges that a single Freshworks employee accessed email addresses from a Zoho database and

4   sent solicitation emails to those email addresses. Zoho does not allege that Freshworks has

5   misused any specific compilations of the "customer and lead names . . . phone numers [sic], key

6   contacts, engagement history, feature and product preferences, pricing terms, prior offers, feature

7   requests and sale strategy information." *Id.* ¶¶ 53, 64. To the extent that Zoho generally alleges

8   misappropriation of any and all compilations—but only makes particular claims regarding a few

9   email addresses—the remaining trade secret allegations in this category should be dismissed.

10  Separately, Zoho alleges that in 2019, "Zoho customers . . . complained that shortly after

11  acquiring Zoho products, they were contacted by Freshworks offering competing solutions." *Id.*

12  ¶ 47. Zoho only names two customers: Dubai Taxi and Sharjah University. *Id.* But correlation in

13  timing is not sufficient to allege misappropriation. *See CleanFish, LLC,* 2020 WL 1274991, at

14  *10. Instead, the plausible explanation—that Freshworks and Zoho are contacting similar clients

15  for similar products—is also the most likely and obvious "innocent explanation." It is hardly

16  surprising that two software providers would be contacting similar potential customers for similar

17  products—particularly if those customers had previously expressed an interest in such products,

18  by signing up on a website or reaching out for a demo.[3] Because these "client list" trade secrets

19  are also insufficiently pleaded, they also fail.

20  **3.     Zoho fails to state a claim for misappropriation of its revenue figures.**

21  Zoho next alleges that "confidential revenue figures for Zoho products" constitute a

22  protectable trade secret that Freshworks allegedly misappropriated. FAC ¶¶ 53, 64. Zoho

23  describes this trade secret as "non-public Zoho revenue numbers for Zoho ServiceDeskPlus and

24  OpsManager" that was shared in June 2011 pitches, and "revenue numbers" generally known to

25  recruited Zoho employees. FAC ¶¶ 31, 33.

26

27  [3] In fact, evidence will show that both Dubai Taxi and Sharjah University had previously reached
    out to Freshworks about Freshworks products before they supposedly became Zoho customers in

28  2019.

To start, Zoho fails to allege **how** its revenue figures are kept confidential, beyond stating that they are "confidential." FAC ¶¶ 53, 64*; see also* Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3) (describing reasonable efforts to maintain secrecy as an essential element of a trade secret claim). In fact, a simple Google search shows that Zoho reports its revenue figures publicly each fiscal year.[4] Here, too, Zoho attempts to cover up the shortcomings in its claim with the fig leaf of confidentiality—but describing a category of information as "confidential" does not transform it into a trade secret. *GAB Bus. Servs.*, 83 Cal. App. 4th at 428-29.

Moreover, as with Zoho's commission structure, its revenue numbers do not have sufficient independent economic value to be considered a trade secret. In fact, this Court considered a similar question in *Cotter v. Lyft, Inc.*, No. 13-CV-04065-VC, 2016 WL 3654454 (N.D. Cal. June 23, 2016), where the defendant sought to seal "the total amount of commissions Lyft took from 'Prime Time' payments by Lyft riders" in two time periods, on the grounds that the amount of commissions was a trade secret. *Id.* at *1-2. This Court held otherwise: "the total amount of commissions Lyft took . . . , i.e. ***its revenue from this product, is not a trade secret*** . . . Though the manner in which Lyft determines its pricing is an important part of its competitive strategy, ***its revenue is not strategy but rather the result of that strategy***." *Id.* (emphasis added). Here, too, all Plaintiff has claimed is its bare revenue numbers—under *Cotter*'s reasoning, those allegations plainly fail to state a trade secret claim.

Even if revenue information alone could be a trade secret and was in fact confidential, Zoho has not described these figures with any particularity. In addition to revenue figures for ServiceDeskPlus and OpsManager, which were allegedly disclosed by Freshworks back in 2011, Zoho accuses Freshworks of acquiring an indeterminate number of revenue figures from recruited employees over a ***ten-year period***. Zoho does so without identifying what form these "revenue"

---

[4] *See, e.g.,* Kritti Bhalla, *Zoho Reports INR 516 Cr Profit For FY 2019*, Inc42 (last accessed June 17, 2020), *accessible at* https://inc42.com/buzz/zoho-reports-inr-516-cr-profit-for-fy-2019/. A court may take judicial notice of publications like websites, which reflect what was in the public realm at the time of publication. *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999).

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-cv-01869-VC
1386203

trade secrets took; who developed them; any specific documents in which they were embodied; or even, for the most part, which products those revenue figures concerned. Without more, Zoho fails to allege how its basic revenue figures are protectable trade secrets.

Moreover, Zoho does not allege how Freshworks misappropriated Zoho's revenue numbers. Again, Zoho describes this trade secret as (1) "non-public Zoho revenue numbers for Zoho ServiceDeskPlus and OpsManager" that was shared in pitch materials in 2011, and (2) "revenue numbers" shared by recruited Zoho employees. FAC ¶ 31. As to the former, as discussed below, the claims would be time barred. As to the latter, Zoho does not plead any specific evidence of misappropriation. Zoho pleads that "Freshworks has recruited over a hundred employees from Zoho" over a ten-year period "to gain access to … confidential Zoho information." FAC ¶ 10. But as Zoho itself concedes, "[r]ecruitment of Zoho employees alone would not be an issue" and does not prove misappropriation of any sort. *Id.* ¶ 34. Indeed, that is the law. *See, e.g.*, Cal. Bus. & Prof. Code § 16600 (voiding "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business"); *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1026 (N.D. Cal. 2016) (California's "settled legislative policy" favors "employee mobility."). Zoho knows the identity of the former Zoho employees who have, over the past decade, joined Freshworks. Zoho's failure to identify a single one of those employees who has taken a single shred of supposedly confidential revenue information is telling.

Zoho cannot satisfy its burden to allege misappropriation with vague allusions to poaching, especially with no allegation of what protectable trade secrets, if any, were taken or used. Zoho's revenue-related allegations fail to support a claim for trade secret misappropriation under DTSA and CUTSA.

### 4. Zoho cannot cobble together trade-secret misappropriation claims with references to general business know-how.

Finally, Zoho pleads that, "on information and belief," "Mathrubootham and Krishnasamy had access to and knowledge of Zoho confidential business information," and "used Zoho know-how, product development, and market data to start Freshworks." FAC ¶¶ 7, 28. Although Zoho sprinkles allegations regarding the misappropriation of general business "know-how" throughout

the FAC, it does not include this "trade secret" in its recitation of its causes of action. FAC ¶¶ 53, 64. And with good reason: Merely acquiring general knowledge about the industry as part of one's job duties is not misappropriation. Indeed, there is no prohibition against "former employees . . . using general knowledge, skill and experience acquired while working for a former employer in order to compete against that employer." *Excelligence Learning Corp. v. Oriental Trading Co*., No. C 03-4947 JF, 2004 WL 2944048, at *3 (N.D. Cal. Dec. 20, 2004) (*citing Morlife, Inc. v. Lloyd Perry*, 56 Cal. App. 4th 1514, 1519 (1997)).

Moreover, Zoho fails to allege use of these purported trade secrets. Its sole proof that this general business know-how was misappropriated is the purported similarity between Zoho's and Freshworks' product lines.[5] But the "innocent explanation" for any alleged similarity in the parties' product lines is obvious: many competitors operating in this space offer some combination of IT, customer service, HR, and marketing solutions. *See Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (The "mere fact" that a competitor began selling products to stores previously supplied by plaintiff "is to be expected from a new [competitor] entering the market" and did not exclude "an innocent explanation."). Notably, Zoho ***does not allege*** that Freshworks' products use any Zoho technology or source code. *See, e.g.*, FAC ¶ 35. If Zoho attempts to rely on the alleged misappropriation of general business know-how to oppose this Motion, even though that trade secret is not listed in its causes of action, that claim also fails.

### B. Zoho's trade-secret allegations concerning revenue information, and concerning unspecified product information and know-how, are time-barred.

Zoho's trade-secret claims related to revenue and product information are barred by the three-year statute of limitations set forth in both the DTSA and CUTSA, *see* Cal. Civ. Code. § 3426.6; 18 U.S.C. § 1836(d), and should be dismissed with prejudice, *see Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1068 (N.D. Cal. 2018) (dismissing claims under

---

[5] To bolster these weak allegations of misappropriation, Zoho also provides a list of press releases that Freshworks allegedly timed "to coincide with Zoho's major product announcements." FAC ¶ 36. As explained above, the three press releases issued by the two companies—even if timed similarly—are entirely unrelated. *See supra* at 3.

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-cv-01869-VC

1386203

1    Rule 12(b)(6) because the claims were barred by the applicable statute of limitations).[6]

2          The statute of limitations runs from the date plaintiff has actual notice of misappropriation

3    or "by the exercise of reasonable diligence should have … discovered" it. *Alta Devices,* 2019 WL

4    1924992, at *12. "[S]ince what trade secret law protects . . . [is] a right to maintain the integrity

5    of a confidential relationship, it is the first known (or reasonably discoverable) breach of that

6    relationship that . . . triggers" the statute of limitations. *Intermedics, Inc. v. Vetritex, Inc*., 822 F.

7    Supp. 634, 652 (N.D. Cal. 1993); *see also Wang v. Palo Alto Networks, Inc*., No. C 121-05579

8    WHA, 2014 WL 1410346 at *7 (N.D. Cal. Apr. 11, 2014) (When defendant failed to return the

9    trade-secret documents in 2008, in violation of a non-disclosure agreement, plaintiff was put on

10   "inquiry notice" of misappropriation).

11         Here, to the extent Zoho alleges anything approaching misappropriation of revenue

12   information, the FAC reveals that Zoho knew or should have known of Freshworks' purportedly

13   unlawful actions almost a decade ago, and at multiple instances since then. Zoho alleges that

14   "Mathrubootham disclosed Zoho's confidential revenue figures to investors and in ***published***

15   ***interviews***" in 2011, while launching the Freshdesk customer service solution. *Id.* ¶¶ 30, 31

16   (emphasis added). Despite this public disclosure of alleged trade secrets, Zoho sat on its hands for

17   nine years before filing this suit.

18         With regard to general know-how and unspecified product information, Zoho's factual

19   allegations begin in 2010. *Id.* ¶ 30 ("Using this knowledge, in October 2010, Mr. Mathrubootham,

20   along with Mr. Krishnasamy, departed Zoho to form Freshworks."). Zoho further alleges that

21

---

22   [6] Zoho also lacks standing to assert its claims related to revenue and product information under
     the DTSA. The DTSA only applies to acts of misappropriation occurring on or after DTSA's
23   enactment date: May 11, 2016. *See* Defend Trade Secrets Act of 2016, Pub. L. 114-153, 130 Stat.
     376 (May 11, 2016); *see also Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-
24   cv-02177-SI, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) ("[W]ithout facts about when
     post-enactment use occurred and whether the information disclosed was new or somehow
25   different from the prior misappropriation, plaintiff has failed to state a claim."). Zoho's FAC
     lacks any specific allegations regarding the misappropriation of general business know-how and
26   revenue figures gleaned from recruited employees after 2016; thus, to the extent its DTSA claim
     relies on those allegations, Zoho does not have standing to assert them under the DTSA. *See*
27   *Vendavo*, 2018 WL 1456697, at *4 (A complaint that fails to "delineate timelines of the alleged
     acts of misappropriation and use of purported trade secrets" lacks facts that are "foundational to
28   the existence of a viable claim.").

DEFENDANT FRESHWORKS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT
Case No. 3:20-cv-01869-VC

1386203

since 2011, "Freshworks has **continued** the practice of misappropriating Zoho's confidential and competitive business information to compete with Zoho." FAC ¶ 10 (emphasis added). Beyond that, Zoho alleges its trade secrets were misappropriated and incorporated into various Freshworks products: Freshdesk, which launched in 2011; followed by Freshservice in 2014; Freshsales in 2016; and Freshteam in 2017. *Id.* ¶ 35. These products were publicly available and described in various public marketing materials, which is how Zoho knows (and has long known) of them. *Id.* At a minimum, each of these products—whose mere existence Zoho's FAC lists as evidence of misappropriation—have been available for **over** three years.

Similarly, Zoho alleges that Freshworks used Zoho's confidential information acquired through recruitment of former employees over the last decade "to craft Freshworks' marketing and press strategy." *Id.* ¶¶ 35-36. Based on its own allegations, Zoho was on inquiry notice of misappropriation with each alleged wave of recruitment. *Intermedics*, 822 F. Supp. at 654.

In sum, Zoho has been on notice of the conduct it purports constitutes misappropriation for many years, going as far back as 2010. Zoho has pleaded no new facts that serve to extend the statute of limitations for its allegations related to revenue information and general know-how.[7] Zoho's claims related to that information are time-barred and should be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Freshworks' motion to dismiss.

Dated: June 25, 2020                                    KEKER, VAN NEST & PETERS LLP


                                                   By:    /S/ Eric MacMichael
                                                          ERIC H. MACMICHAEL

                                                          Attorneys for Defendant FRESHWORKS,
                                                          INC.

---

[7] In rare instances, a plaintiff may excuse his late filing by "setting forth pleaded facts to show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 175 (2012) (citation omitted). Zoho's FAC lacks any allegations explaining its delay in filing and makes no effort to discuss its "inability" to discover the grounds for the suit sooner.

1386203