KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
WARREN A. BRAUNIG - # 243884
wbraunig@keker.com
JO W. GOLUB - # 246224
jgolub@keker.com
SARAH SALOMON - # 308770
ssalomon@keker.com
DEEVA SHAH - # 319937
dshah@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant FRESHWORKS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ZOHO CORPORATION PVT. LTD,<br><br>    Plaintiff,<br><br>    v.<br><br>FRESHWORKS INC.,<br><br>    Defendant. | Case No. 3:20-cv-01869-VC<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:     August 20, 2020<br>Time:     10:00 a.m.<br>Judge:    Hon. Vince Chhabra<br><br>Date Filed: March 17, 2020<br><br>Trial Date: None Set |

## I. INTRODUCTION

Zoho's Opposition validates the fundamental purpose of Freshworks' Motion to Dismiss, which is to narrow this case to any adequately pleaded allegations of trade-secret misappropriation prior to discovery. Because there are no such allegations, and indeed no adequately alleged trade secrets at all, the FAC must be dismissed.

Zoho's Opposition is a mess of contradiction. On the one hand, Zoho reiterates the FAC's sweeping allegations of a "decade-long" pattern of misappropriation for purposes of bolstering Zoho's trade-secret claims, while, on the other hand, asserting that these vague allegations have nothing to do with Zoho's trade-secret claims. Indeed, Zoho now concedes that many of its allegations do not, and were never intended to, support its trade-secret misappropriation claims. First, in an attempt to avoid the applicable statutes of limitation, Zoho explains that its allegations regarding "Mr. Mathrubootham's use and disclosure of product revenue in 2011" were included "for context," and not as part of any cause of action. Opp. at 14-15. This concession is fatal to Zoho's alleged "revenue" trade secret, as this is the only revenue information identified in the FAC. Second, Zoho admits (as it must) that "merely hiring [a] competitor's employees" is not a "sufficient basis for asserting trade secret misappropriation," even though that is precisely how Zoho alleges Freshworks obtained its partner commission structure. *Id.* at 15. Third, Zoho acknowledges that its revenue trade secrets are not based on the allegations in the FAC, but rather hinge on what "Zoho explained to Freshworks prior to the filing of the Motion to Dismiss." *Id.* at 12. That is no basis to survive Rule 12(b)(6). Finally, Zoho does not even bother to defend its general know-how trade secrets, abandoning those allegations in the FAC altogether.

Once these concededly irrelevant allegations are filtered out, all that remains of Zoho's FAC is that a single Freshworks employee improperly obtained customer email addresses from a Zoho database and sent emails to those addresses. That is it. Zoho should not be permitted to leverage that narrow allegation into a discovery fishing expedition and all-out assault on Freshworks' business. For these reasons, and those explained in further detail below, Freshworks' Motion to Dismiss the FAC should be granted.

## II. ARGUMENT

### A. The Court can, and should, consider Zoho's alleged trade secrets independently.

In an effort to obtain broad discovery into a competitor's business, Zoho attempts to squeeze disparate and inadequately pleaded allegations of trade-secret misappropriation into one kitchen-sink-style cause of action. Even though its claims are premised on three entirely different categories of trade secret (partner commissions, revenue figures, and client lists, respectively), Zoho claims the Court cannot evaluate each "separately" because "Rule 12(b)(6) does not provide for dismissal of parts of a claim." Opp. at 6. That is wrong.

On the contrary, courts facing a laundry list of dissimilar allegations are *expected* to parse the protectable trade secrets from the deficient ones on a Rule 12(b)(6) motion. *See, e.g., Citcon USA, LLC v. RiverPay Inc.*, No. 18-CV-02585-NC, 2018 WL 6813211, at *5 (N.D. Cal. Dec. 27, 2018) (holding some trade-secret claims sufficiently pleaded but dismissing other unrelated allegations for lack of particularity); *Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015) ("To pass muster under Rule 8, plaintiffs raising claims under CUTSA must *itemize* the information claimed as a trade secret with reasonable particularity. . . and make an 'item-by-item determination' of what is and is not protectable.") (emphasis added); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("[W]hile courts are expected to make an *item-by-item determination* of what is and is not a trade secret, alleged trade secrets that are not sufficiently identified to be included within either category *cannot be the basis of a claim* of misappropriation") (emphasis added). Zoho argues *Citcon* departs from the "common approach," Opp. at 7, but *Top Agent Network* and *TriZetto* plainly show otherwise.

The cases Zoho cites for the proposition that trade secrets cannot be broken up on a 12(b)(6) motion say nothing of the sort. *See* Opp. at 7. None of the cases Zoho relies upon necessitated—nor did the defendants request—that individual trade secrets be addressed on their own merits because of a lack of similarity. *See Albert's Organics, Inc. v. Holzman*, No. 19-CV-07477-PJH, 2020 WL 1332074 (N.D. Cal. Mar. 23, 2020) (denying a motion to dismiss where the alleged trade secrets all related to customer information allegedly misappropriated around the

2

same time); *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020) (denying a motion to dismiss where the alleged trade secrets all related to the misappropriation of aspects of plaintiff's manufacturing processes); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) (denying motion to dismiss where defendant did not argue that specific categories of trade secrets were insufficiently pleaded). Instead, in most of those cases, the claims were either temporally similar or factually similar. Here, that is not the case, and Zoho's claimed trade secrets should be considered individually.

Indeed, adopting Zoho's approach would lead to absurd results. Under Zoho's interpretation of Rule 12(b)(6), as long as a plaintiff could sufficiently plead misappropriation of a single trade secret, he could add an unlimited number of vague and specious "trade secrets" to that cause of action and proceed to discovery on those, even if those secondary allegations were wholly unrelated to the initial trade secret or clearly time-barred. "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into defendants' files, and then cleverly specify what ever [sic] happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014). This Court should "not allow this old trick of vague pleading with the blanks to be artfully filled in only after discovery." *Id.*

These arguments reveal Zoho's FAC for what it is: an attempt to use the DTSA and CUTSA to facilitate a thinly-veiled fishing expedition into Freshworks' business.

      **B.**    **Zoho's Opposition only highlights its inability to state a claim for trade-secret misappropriation.**

As Freshworks explained in its Motion, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); Mot. at 6. This rule is in place for good reason: the FAC must "give defendants reasonable notice of the issues which must be met at the time of trial and [ ] provide reasonable guidance in ascertaining the scope of appropriate

3

discovery." *Five Star Gourmet Foods*, 2020 WL 513287 at *6. Zoho's FAC does not meet this standard, and Freshworks should not be forced to submit to the admittedly broad discovery Zoho seeks, *see* Opp. at 8, unless Zoho can adequately plead a claim for trade-secret misappropriation.[1]

### 1. Zoho's claim for misappropriation of its partner commission structure fails.

Rather than pointing to specific allegations in the FAC that describe its partner commission structure, Zoho relies on a tautology: "[t]he name of this trade secret, . . . itself explains what it is," and "there is no requirement for . . . detail." Opp. at 14. But binding caselaw requires more than just a name, and "conclusory and generalized allegations are insufficient" to state a claim. *Vendavo*, 2018 WL 1456697 at *4.

Zoho bases its claim for misappropriation of its alleged partner-commission trade secrets on conclusory and generalized allegations. Zoho first attempts to entirely recast this trade secret as "the formula by which Zoho calculates compensation for its partners." Opp. at 14. But, the word formula appears ***nowhere*** in the FAC. Instead, Zoho describes this trade secret in its operative pleading only as "Zoho's confidential Partner commission structure." FAC ¶ 48. Zoho's goal is obvious—by renaming this trade secret a "formula," it hopes to bring this trade secret within the protection offered by this Court in *Cotter v. Lyft, Inc.*, No. 13-CV-04065-VC, 2016 WL 3654454, at *2 (N.D. Cal. June 23, 2016), to "formulas"—i.e., "the algorithms and proprietary price models"—used to calculate commissions. *Id*. Unfortunately for Zoho, it pleaded no such proprietary algorithm or model.

Stymied in this effort to amend its FAC via its Opposition, Zoho falls back on its failsafe argument that the partner commission structure is a trade secret because it is "confidential." Opp. at 14. But confidentiality alone does not a trade secret make. *See GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 428-29 (2000), *as modified* (Sept. 14, 2000), *as modified on denial of reh'g* (Sept. 26, 2000) (even though "[e]vidence of the secrecy of

---

[1] Because Zoho has removed its general know-how allegations from its trade-secret causes of action, and does nothing to resuscitate them in its Opposition, those claims are abandoned. *See Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition to motion to dismiss failed to address arguments in motion to dismiss, it was "effectively abandoned").

[Plaintiff's] salary information was indeed undisputed," Plaintiff "failed to prove . . . that the information had 'independent economic value.'"). If, for example, Zoho kept a random string of numbers written on a piece of paper under lock and key, those security measures alone would not transform the scrap of paper into a trade secret with independent economic value.[2]

Zoho's allegations regarding misappropriation are equally defective. Zoho declines to name who allegedly took the partner commission structure, how they obtained it, or when, instead positing only that Freshworks "somehow knows Zoho's confidential Partner commission rate structure." Opp. at 4; FAC ¶ 48. Zoho's response to "how" Freshworks misappropriated its trade secrets is even more disingenuous. According to Zoho, "because of the long history and overlap in personnel between the companies, Freshworks is likely to know it is in possession of it by improper means." Opp. at 14; FAC ¶ 48. But, Zoho never even attempts to argue that any of the employees that left Zoho for Freshworks had access to that information or even came from a department that dealt with partner commissions. Furthermore, as explained above, Zoho itself concedes that "merely hiring [a] competitor's employees and launching competing products" *is not* "sufficient basis for asserting trade secret misappropriation." Opp. at 15. Zoho's own words sink its misappropriation allegations.

Finally, Zoho's claim that Freshworks used the commission structure to "undercut Zoho's relationships with its partners" is hopelessly vague and must be rejected at the pleading stage. Opp. at 14; FAC ¶ 48. Zoho again fails to provide any details, such as when this supposedly happened, who was involved, or how Freshworks "undercut" Zoho. Zoho does not even allege that any partners defected to Freshworks as a result of the supposed misappropriation. As explained in Freshworks' Motion, offering a better commission rate than Zoho does not prove misappropriation because there are equally plausible innocent explanations for this conduct. Mot.

---

[2] Even Zoho's emphasis on the confidentiality of its partner commission structure is suspect. Zoho acknowledges that its "Partner commission structure" is shared with "each and every Zoho Partner," albeit under "written [confidentiality] obligations." FAC ¶ 48. Even if it were true that every one of those partners, around the world, had signed some form of confidentiality agreement, the widespread distribution of Zoho's structure outside the company may preclude any claim on confidentiality. *See, e.g., Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *10-11 (N.D. Cal. Dec. 20, 2018) (plaintiff unlikely to prevail on its trade-secret claim based on "pricing models . . . widely used throughout the industry," even where "employees [had] to sign an Employee Handbook and PIAA agreement").

at 8. *See CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) (complaint must plead facts that tend to "exclude an innocent explanation"). Zoho does not grapple at all with this issue, thus tacitly conceding these allegations are deficient.

### 2. Zoho's claim for misappropriation of its revenue figures fails.

In defense of its revenue "trade secret", Zoho again relies on facts it did not actually plead. Zoho claims that Freshworks is supposed to know, based on what "Zoho explained . . . prior to the filing of the Motion to Dismiss," that "this aspect of Zoho's claim is based on Freshworks access to Zoho's CRM." Opp. at 12. But, except for judicially noticeable facts, this Court can only consider what is within "the four corners of [the] Amended Complaint" on a motion to dismiss. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1010 (2015). Neither a justification for trade-secret protection of Zoho's revenue figures, nor the evidence of the misappropriation that Zoho now describes, is anywhere to be found in the FAC.

Zoho now claims in its Opposition that the revenue figures are protectable because they "reflect which products are successful and which are less so," allowing a competitor to "avoid wasting effort on less lucrative product lines." Opp. at 13. Even if that were true, Zoho has never pleaded it, even after taking two swings at crafting a viable complaint. All Zoho actually pleads is that "Zoho's confidential revenue figures constitute trade secrets." FAC ¶ 64. Moreover, this Court has already expressed deep skepticism that bare revenue figures could be a trade secret— "the total amount of commissions" a company takes from a product, "i.e. its ***revenue*** from this product, is not a trade secret." *Cotter*, 2016 WL 3654454 at *1-2 (emphasis added). "[R]evenue is not [protectable] strategy but rather the result of [a] strategy." *Id.*

In response, Zoho misquotes the *Cotter* opinion, claiming that this Court held the revenue figures in *Cotter* were not a trade secret because they did not give plaintiffs "an opportunity to obtain an advantage over competitors who do not know or use [them]." Opp. at 13 (*citing Cotter*, 2016 WL 3654454 at *2). But Zoho has cherrypicked this statement from the Court's general definition of a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and ***which gives him an opportunity to obtain an advantage over competitors who do not know or use it***." *Cotter*, 2016 WL 3654454 at *2 (citing *Apple Inc. v.*

6
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 3:20-cv-01869-VC

1387118

*Samsung Elecs. Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013) (emphasis added)). The **application** of that rule to revenue information in *Cotter* was that revenue figures are unlikely to be trade secrets because they are a "bare *output*," and reflect no proprietary model or algorithm. *Cotter*, 2016 WL 3654454 at *2. Zoho's revenue trade secret should be dismissed on this basis alone.

Next, Zoho tries to rewrite the FAC by claiming that the revenue figures at issue were also taken from the CRM. Opp. at 12. Not so. As Zoho has made clear, its allegations that Freshworks "accessed and reviewed its CRM" are in paragraphs 37-47 of the FAC. Opp. at 12. Those paragraphs do not contain any specific allegations regarding misappropriation of revenue figures. Instead, Zoho merely states that the CRM "contains . . . reveneue [sic] figures." FAC ¶ 47. But, the fact that revenue figures—which ones, Zoho does not explain—are theoretically accessible in some part of this database cannot be enough to establish misappropriation.

With respect to misappropriation of revenue information, what Zoho actually alleged is that: (1) Mr. Mathrubootham took "(product specific) revenue figures" when he left Zoho in 2010, and "improperly included" them "in early Freshworks investor pitch materials" in 2011, and (2) Freshworks gleaned additional "revenue numbers" from recruited Zoho employees. FAC ¶¶ 6, 31, 33. But Zoho now admits that these allegations of misappropriation were mere "context" and not part of Zoho's claim, Opp. at 15, because it knows such an early allegation of misappropriation seals its fate with respect to the statute of limitations. *See infra* Section II.C. Zoho disavows its "recruitment" allegations because it acknowledges that Freshworks' hiring of Zoho employees "is not alone a basis" for misappropriation allegations. Opp. at 15. Zoho cannot now graft its unrelated allegations regarding the accessing of the CRM by a single Freshworks employee onto this claim to save it.

Finally, Zoho claims it alleged confidentiality of these revenue figures because "it keeps its CRM . . . strictly confidential." Opp. at 13. This is still more misdirection. As explained above, Zoho has not pleaded any specific allegations with respect to the revenue figures being taken from the CRM. FAC ¶¶ 6, 31, 33. Simply put, those security measures are therefore irrelevant.

### 3. Zoho's claim for misappropriation of its client lists fails.

Finally, Zoho's Opposition misstates Freshworks' argument regarding its client-list trade

secrets. *See* Opp. 8-12. The issue before the Court is not whether Zoho's CRM *could* house trade secrets or whether those trade secrets *might be* protectable. Instead, the issue is that Zoho's FAC does not adequately allege the misappropriation of the vague compilations Zoho has pleaded.

In its Opposition, as in its FAC, Zoho presents a laundry list of data supposedly included in its "confidential compilations." Opp. at 10. But Zoho does not identify which compilations it claims are a trade secret (all of the data, each individual category of information, or some combination in between). Zoho certainly does not allege that these full compilations of data were misappropriated. Instead, Zoho's allegations pertain solely to email addresses allegedly taken by a single Freshworks employee. *See* FAC ¶¶ 37-47.

Zoho claims that it cannot provide any additional detail regarding misappropriation of the compilations in its CRM because "the full scope of Freshworks' access to Zoho's CRM and use of the data contained therein is not and cannot be known to Zoho at this time." Opp. at 3. But Zoho does not allege the typical misappropriation scenario, where, for example, a departing employee downloads significant amounts of information and the full extent of the misappropriation is unknown. Here, Zoho controls the CRM and could easily divine the scope of any alleged intrusion; it simply has chosen not to do so. And although Zoho cavalierly asserts that *Freshworks* accessed its CRM, the FAC is limited to allegations involving one rogue employee accessing the email addresses of a set of potential customers. Zoho attempts to convert that isolated instance into general allegations of misappropriation of any and all compilations without any specificity. This trade-secret claim should be dismissed.[3]

**C.    Even if the Court does not address Zoho's trade-secret allegations independently, Zoho's claims are time-barred.**

To the extent Zoho attempts to rely on any specific facts to support a claim of misappropriation, almost all of those allegations are time-barred. Zoho attempts to place the burden on Freshworks "to show how . . . the claims are shown to be time-barred by the face of the

---

[3] Likewise, the Opposition repeatedly states that *Freshworks* "lied" about accessing the email addresses in question. But the FAC only alleges that a former Freshworks' employee, Arjun Ravikumar, was not truthful when confronted about how he had obtained certain email addresses. *See* FAC ¶¶ 37-47. There is no allegation in the FAC that Freshworks engineered or knew about Ravikumar's statements—because Freshworks did not.

8
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No. 3:20-cv-01869-VC

1387118

1  FAC." Opp. at 15. But when alleging claims that are facially time-barred, it is **Zoho** that must

2  plead facts "show[ing] '(1) the time and manner of discovery and (2) the inability to have made

3  earlier discovery despite reasonable diligence.'" *Czajkowski v. Haskell & White, LLP*, 208 Cal.

4  App. 4th 166, 175 (2012) (citation omitted). Not only does Zoho's FAC lack such allegations, the

5  FAC affirmatively pleads that Zoho was placed on inquiry notice nine years ago. *See Alta*

6  *Devices, Inc. v. LG Electronics, Inc*., 343 F. Supp. 3d 868, 884 (N.D. Cal. 2018) (holding the

7  statute of limitations runs from the date plaintiff has actual notice of misappropriation or "could

8  have discovered" it through "reasonable diligence").

9  The only specific, revenue-based allegation in the FAC is that Mathrubootham allegedly

10 disclosed revenue figures to investors in 2011. *See* FAC ¶¶ 30, 31. Zoho now states in its

11 Opposition that "Zoho does not allege trade secret misappropriation based on . . .

12 Mathrubootham's use and disclosure of product revenue in 2011." Opp. at 14-15. But Zoho

13 cannot point to a single other instance of alleged misappropriation of revenue in its FAC and

14 instead tries to shoehorn this trade secret into its CRM allegations, to no avail. *See supra* Section

15 II.B.2. Zoho waited nine years after the supposed misappropriation of its revenue figures to file

16 this time-barred suit.

17 Zoho's allegations regarding general know-how, which are conspicuously unaddressed in

18 the Opposition, originated in 2010. FAC ¶ 30 ("Using this knowledge, in October 2010, Mr.

19 Mathrubootham, along with Mr. Krishnasamy, departed Zoho to form Freshworks."). The FAC

20 specifically states that "[s]ince [2011], Freshworks has *continued* the practice of

21 *misappropriating* Zoho's confidential and competitive *business information*." *Id.* ¶ 10 (emphasis

22 added). Even Zoho's Opposition notes that "Zoho was concerned that Messrs. Mathrubootham

23 and Krishnasamy would use confidential Zoho" as early as 2010. Opp. at 2. The FAC and the

24 Opposition explicitly allege facts showing that Zoho was on inquiry notice of this allegedly

25 continuing misappropriation since Freshworks' founding in 2010. The claims are time-barred.

26 Finally, Zoho argues that all of its trade-secret allegations are related enough that they

27 properly constitute one single claim and that the Court cannot consider whether the allegations

28 are independently sufficient. If this Court concludes that Zoho's trade-secret allegations cannot be

considered on their independent bases, then Zoho's entire trade-secret claim is time-barred. "When the statute of limitations begins to run on some of a plaintiff's trade-secret claims against given defendants, the statute also begins to run at the same time as to other trade-secret claims against those same defendants, ***even if there have not yet been any acts of misappropriation of the other trade secrets***, at least when the plaintiff shared all the trade secrets with the defendants during the same time period and in connection with the same relationships and when the trade secrets concern related matters." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525-526 (N.D. Cal. 2000); *see also Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 653 (N.D. Cal. 1993) ("It is the first known (or reasonably discoverable) breach of that [confidential] relationship that creates the right to sue and thus triggers the running of the statute of limitations. The specific nature of the second breach, in relation to the specific nature of the first breach, should make no difference."). If Zoho's allegations are properly alleged as a single claim of related misappropriation, Zoho has been on notice of Freshworks' allegedly "***continued*** . . . practice of ***misappropriating***" since "October 2010" and the claim is time-barred. FAC ¶¶ 8-10. If not, the Court should consider Zoho's claims independently and dismiss each for failure to state a claim.

## III.   CONCLUSION

Zoho wants to have it both ways: it seeks to strengthen its trade-secret claims with allegations of broad, sweeping conduct, while also claiming that those allegations are only "for context" and are not part of its claim. Opp. at 14-15. How exactly Freshworks, or the Court, is supposed to determine what is "context" in the FAC, versus allegations supporting Zoho's claims, is unclear. But, more importantly, Zoho's new framing of these allegations as background illustrates the underlying problem with the FAC: it lacks the specificity and particularity necessary to allege trade-secret misappropriation.

For the foregoing reasons, the Court should grant Freshworks' Motion to Dismiss.

| | |
|---|---|
| Dated: July 16, 2020 | KEKER, VAN NEST & PETERS LLP |
| | By: /s/ Eric H. MacMichael |
| | ROBERT A. VAN NEST |
| | ERIC H. MACMICHAEL |
| | WARREN A. BRAUNIG |
| | JO W. GOLUB |
| | SARAH SALOMON |
| | DEEVA SHAH |
| | |
| | Attorneys for Defendant FRESHWORKS INC. |